## D. B. ANDREWS v. NATIONAL OIL COMPANY.

(Filed 1 March, 1933.)

**1. Pleadings D a—**

    Upon demurrer the allegations of the complaint are to be taken as true, and a demurrer to the sufficiency of the complaint will not be sustained if the complaint in any of its parts sufficiently alleges a cause of action.

**2. Money Received B a—Complaint held to sufficiently state cause of action for money had and received.**

    The complaint in this action alleged in substance that plaintiff ran a gasoline filling station leased by the defendant under an agreement that plaintiff would buy gasoline from defendant at one cent per gallon over the wholesale price and retail it for the retail market price, that the pumps were owned and controlled by defendant, that plaintiff discovered that he was losing money and repeatedly complained to defendant and suggested that the pumps were leaking, that defendant, with a reckless disregard for the truth of its statements, falsely represented that the pumps were in good condition and suggested that the loss was due to plaintiff's bookkeeping, that sometime thereafter plaintiff tested the pumps and found a shortage and that defendant then also tested them with the same result, that defendant tore up the concrete and discovered a leak in the pipes as big as a man's finger. Plaintiff prayed judgment for the amount he had paid defendant for gasoline which had leaked from the pumps as money had and received by defendant to the use of plaintiff: *Held*, the exact relationship between the parties is immaterial, and the complaint sufficiently states a cause of action for money had and received, and a demurrer thereto was properly overruled.

APPEAL by defendant from *Daniels, J.,* at October Term, 1932, of EDGECOMBE. Affirmed.

The complaint is as follows:

"1. The plaintiff, D. B. Andrews, is a resident of Edgecombe County, North Carolina, and the defendant National Oil Company is a corporation organized and doing business under the laws of the State of Virginia, having its principal office in the city of Richmond, but doing

business in North Carolina and having an office in Nash County in said State, on Earl Street, in the city of Rocky Mount.

2. On 6 October, 1930, the defendant was in possession of a gasoline filling station in the city of Rocky Mount, at the corner of Church and Nash streets, known as 'Church Street Service Station,' under a lease expiring 30 September, 1932. The said service station was equipped with three gasoline tanks buried underground and covered with concrete, two of which had one gasoline pump each, the other having two gasoline pumps connected with the tank by underground pipes through a T-joint.

3. That on 6 October, 1930, the defendant made a verbal contract with the plaintiff whereby plaintiff agreed until the expiration of said lease to occupy and operate the said service station, buying all gasoline and oil for sale for automobiles from the defendant daily therefor at current tank-wagon prices, plus one cent additional per gallon, and selling same at current retail prices in Rocky Mount, N. C., the additional one cent per gallon on the gasoline being paid as rent for the premises and the tanks and gasoline pumps, the plaintiff himself owning the air pump, greasing equipment, tools, etc., plaintiff's compensation for his services as sales agent or commission man for defendant being the difference between the cost and the retail price of the products handled.

4. Within sixty days after 6 October, 1930, the plaintiff discovered that he was losing money, apparently through shortage in gasoline, and complained to the defendant about it, suggesting that the underground tanks belonging to the defendant were leaking. The defendant assured plaintiff that this could not be so, that it had operated these tanks for a long time and that it knew that they were in good condition, that the defendant suggested that the loss was due to plaintiff's faulty records, and not to any leak. Plaintiff accepted the assurances made by the defendant and continued to buy gasoline from it. Plaintiff had no right to tear up concrete and inspect the tanks which were the property of the defendant, and no duty to do so, and relied upon the assurances made to him by the defendant in continuing to let the defendant put gasoline into the said tanks.

Said assurances were in fact untrue, and were made by defendant in reckless disregard of their truth or falsity, with intent that plaintiff should rely thereupon and continue to buy gasoline from the defendant. Throughout the year 1931, plaintiff repeatedly made complaints to the defendant that he was losing gasoline in some unexplained way, and requested that the defendant tear up the concrete and examine the tanks, but as often as plaintiff made complaint the defendant assured him that it must be faulty records, and that there could be no leak in the tanks, which assurances were accepted by the plaintiff as a possible

explanation, until 19 March, 1932, when plaintiff made a careful test of the pumps on the largest tank, allowing no one to operate these pumps except himself from the 19th of March until the 21st of March, locking both pumps and fill pipe when plaintiff was absent during this period, the result of which test was a loss of some unexplained cause of forty-three gallons out of two hundred and seventy gallons, in the space of 48 hours. Thereafter the plaintiff refused to permit the defendant to put any more gasoline into the tank with the two pumps which had been tested. The defendant for the first time made a test on its own account on Tuesday, 22 March, 1932, locking both pumps and fill pipe, and found a loss of eight gallons out of one hundred gallons in the space of 5 hours. A few days thereafter the defendant's district manager again insisted that the loss was plaintiff's fault and not a leak in the tanks, but plaintiff persisted in refusing to permit any gasoline to be put into that tank, and finally the defendant broke up the concrete and examined the tank and found a leak in the pipe at the T-joint, through which a stream of gasoline as big as a man's finger was running out. The plaintiff immediately demanded reimbursement from the defendant for gasoline lost through the leak, which demand the defendant referred to its district manager, who ignored it.

5. The defendant repaired the leak and shortly thereafter, to wit, on 7 April, 1932, at the request and insistence of the defendant, the plaintiff agreed to a rescission of his contract with the defendant, and sold his equipment, thus terminating his connection with the defendant.

6. That the plaintiff has suffered a minimum loss through the said leak of 8,370 gallons of gasoline from 6 October, 1930, to 7 April, 1932, for which the plaintiff paid the average price of 16½ cents per gallon, making a total of $1,381.05 which the plaintiff has paid the defendant for gasoline which was lost through the leak in the equipment belonging to the defendant into which plaintiff was required to place said gasoline, which was under the sole control of the defendant, for which the plaintiff has received no benefit, which amount was not paid voluntarily, but upon the insistence of the defendant that plaintiff's loss was due to plaintiff's fault in that he was ignorant of proper methods of accounting which assurances were accepted by the plaintiff until 19 March, 1932, when plaintiff acquired definite and reliable knowledge that there was a leak in the defendant's equipment. The said money was paid by plaintiff to the defendant in good faith under a mutual mistake of fact, induced by the assurances of the defendant, but for which plaintiff would not have paid for said gasoline, and plaintiff is entitled to recover the same from the defendant in equity and good conscience as money had and received to his use.

Wherefore, plaintiff prays that he recover of the defendant the sum of $1,381.05 with interest from the average interest date, 1 July, 1931,

at the rate of six per cent per annum and the costs of this action, and such other and further relief as he may be entitled to."

The demurrer of defendant is as follows: "The defendant demurs to the complaint filed in this action by the plaintiff upon the following grounds; that the complaint does not state facts sufficient to constitute cause of action, for that: (1) The complaint does not allege facts which show that the defendant was under any legal or contractual duty to discover the leaks in the tank, if any existed, or to repair such leaks, if any existed. (2) The complaint does not allege facts which show that the defendant knew of the existence of such leaks in the tank, if any existed, and knowing such facts falsely represented to the plaintiff that none existed. Wherefore, the defendant prays that this demurrer to the complaint be sustained and that this action be dismissed at plaintiff's cost. This 13 September, 1932."

The court below rendered the following judgment: "This cause coming on to be heard upon demurrer filed by defendant to the complaint and being heard and the plaintiff moving for leave to file an amendment to the complaint during the course of the argument, the defendant not objecting, the court allowed the amendment and the cause was determined upon the demurrer to the complaint as amended. After argument, it is ordered, considered and adjudged: (1) That the plaintiff is given leave to amend the complaint by inserting in paragraph four thereof the following: 'Said assurances were in fact untrue, and were made by defendant in reckless disregard of their truth or falsity, with the intent that plaintiff should rely thereupon and continue to buy gasoline from the defendant.' (2) That the demurrer filed by the defendant, considered as directed to complaint as amended, is overruled and the defendant is allowed thirty days from date of this judgment to file answer."

The defendant excepted, assigned error to the judgment as signed and appealed to the Supreme Court.

*Battle & Winslow for plaintiff.*
*Gilliam & Bond for defendant.*

CLARKSON, J. "The office of a demurrer is to determine the legal sufficiency of a pleading, admitting for the purpose the truth of all the matters and things alleged therein." *Davies v. Blomberg,* 185 N. C., at p. 496. *Mountain Park Institute v. Lovill,* 198 N. C., at p. 645-6.

In *Smith v. Suitt,* 199 N. C., at p. 9, speaking to the subject: "The complaint is not demurrable unless it is wholly insufficient. If a demurrer is interposed to a whole complaint and any one of the causes of action is good the demurrer will be overruled."

The facts: The defendant was in possession of a filling station in the city of Rocky Mount, under a lease expiring 30 September, 1932. The service station was equipped with three gasoline tanks buried underground and covered with concrete, two of which had one gasoline pump each, the other having two gasoline pumps connected with the tank by underground pipes through a T-joint. On 6 October, 1930, defendant made a verbal contract "whereby plaintiff agreed until the expiration of said lease to occupy and operate the said service station, buying all gasoline and oil for sale for automobiles from the defendant and paying the defendant daily therefor at current tank-wagon prices, plus one cent additional per gallon, and selling same at current retail prices in Rocky Mount, N. C., the additional one cent per gallon on the gasoline being paid as rent for the premises and the tank and gasoline pumps, the plaintiff himself owning the air pump, greasing equipment, tools, etc."

Within sixty days plaintiff discovered that he was losing money and complained to defendant, suggesting that the underground tanks belonging to it were leaking. "The defendant assured plaintiff that this could not be so, that it had operated these tanks for a long time and that it knew that they were in good condition." Relying on the assurances which were untrue and made by defendant in reckless disregard of their truth or falsity, with intent that plaintiff should rely on same, and from the pleadings and by inference he did rely on same, and plaintiff continued to buy from defendant gasoline. The complaints were repeatedly made by plaintiff to defendant, and defendant assured him "that there could be no leak in the tanks."

On 19 March, 1923, plaintiff made test and found "a loss of eight gallons out of one hundred gallons in the space of five hours. A few days thereafter the defendant's district manager again insisted that the loss was plaintiff's fault and not a leak in the tanks, but plaintiff persisted in refusing to permit any gasoline to be put into that tank, and finally the defendant broke up the concrete and examined the tank and found a leak in the pipe at the T-joint, through which a stream of gasoline as big as a man's finger was running out. The plaintiff immediately demanded reimbursement from the defendant for gasoline lost through the leak, which demand the defendant referred to its district manager, who ignored it."

The plaintiff now sues for gasoline "which was lost through the leak in the equipment belonging to the defendant into which plaintiff was required to place said gasoline, which was under the sole control of the defendant"; and alleges that "plaintiff is entitled to recover the same from the defendant in equity and good conscience as money had and received to his use."

It is said that fraud is hard to define as the ramifications are so subtle that they are hard to discover—like unto the serpent in the Garden of Eden "more subtle than any beast of the field."

The relationship between plaintiff and defendant, under the contract between them, is not easy to define. We do not think it necessary to go into the different aspects of employer and employee, landlord and tenant, licensor and licensee, sales agent or commission man, bailor and bailee, independent contractor, etc. These are elaborately argued pro and con on the hearing and in the briefs of litigants.

In *Acceptance Corporation v. Mayberry,* 195 N. C., at p. 513, it is said: "The Court has repeatedly said that in order to determine the nature of a contract, and the relation of the parties thereto, with respect to each other, and with respect to the subject-matter of the contract, it looks to the real intention of the parties and construes their contract accordingly, without much, if any, regard to the name by which it is designated or to the particular language employed."

"The law is, that 'an agreement ought to receive that construction which will best effectuate the intention of the parties to be collected from the whole of the agreement,' and that 'greater regard is to be had to the clear intention of the parties than to any particular words which they may have used in the expression of their intent.' Anson on Contract, p. 425; Wigmore on Evidence, sec. 2460." *Cole v. Fibre Co.,* 200 N. C., at p. 489; *Rushing v. Texas Co.,* 199 N. C., 173.

The defendant was in possession of a gasoline filling station. It had buried underground, concealed in the earth and covered with concrete, three gasoline tanks for the purpose of housing gasoline. Two of these had one gasoline pump each and the other had two gasoline pumps, connected with the tank by underground pipes through a T-joint. In the pipe at the T-joint to the gasoline tanks was a leak, which was unknown to plaintiff. Defendant had the sole control over the tanks, pipe and T-joint. They were installed by and the property of defendant. Defendant knew, or in the .exercise of due care ought to have known, of the leak. Plaintiff each day put the gasoline which he sold and made a cent a gallon on, into the tanks. Every assurance was made plaintiff during the loss of gasoline that the tanks were in good condition and there was no leak. Plaintiff relied and acted on these assurances, which were untrue, the truth or falsity of which, in the exercise of due care, defendant ought to have known were untrue. Plaintiff kept buying gasoline from defendant, paying for same and at last discovered by test the leakage in the pipe at the T-joint—which was owned and controlled by defendant. Finally defendant broke up the concrete, which it had the sole control over, and found a leak in the pipe at the T-joint, through which a stream as big as a man's finger was running out.

————————————————————————————————————————

Call the contract what you may, we think plaintiff has alleged a good cause of action against defendant. The strength of the common law is its elasticity to meet the varying situations as they arise in the course of human events. The filling station, which has come into play with the motor vehicles, and their relation to the gasoline and oil distributors are interwoven. In the present case *one party* owned the land, *the operator* the air-pump, greasing equipment, tools, etc. The *distributor* the underground pipes, tanks, T-joint, etc., concealed and covered with cement, and the tanks connected by underground pipes with a T-joint. The operator got one cent a gallon for his services and the distributor each day supplied the gasoline as needed. The demurrer was properly overruled.

In *Bahnsen v. Clemmons,* 79 N. C., at p. 557, we find: " 'When the defendant,' says Mr. Greenleaf 'is proved to have in his hands the money of the plaintiff which *ex equo et bono, he ought to refund, the law conclusively presumes that he has promised so to do,* and the jury are bound to find accordingly; and after verdict the promise is presumed to have been actually proved.' 2 Greenleaf Ev., sec. 104. 'The count for money had and received which in its spirit and objects has been likened to a bill in equity, may in general be proved by any legal evidence showing that the defendant has received or obtained possession of the money of the plaintiff which in equity and good conscience he ought to pay over to the plaintiff.' *Ibid.,* sec. 117."

In *Jenkins v. Wood,* 201 N. C., at p. 463, is the following: "The defendant insists that fraud is not sufficiently pleaded, but the facts warrant a recovery for money had and received, and the complaint, by liberal construction, is broad enough to support such theory. *Stroud v. Ins. Co.,* 148 N. C., 54, 61 S. E., 626; *Mitchem v. Pasour,* 173 N. C., 487, 92 S. E., 322."

We see no error in the court below overruling the demurrer. The judgment is

Affirmed.